UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-78-H

BARTON BRANDS, LTD.                                                    PLAINTIFF

VS.

O'BRIEN & GERE, INC. OF
NORTH AMERICA, et al.                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Barton Brands, Ltd. ("Barton Brands") filed suit alleging breach of contract,
breach of express and implied warranty, negligence, negligent misrepresentation and seeks
declaratory relief against Defendants O'Brien & Gere Engineers, Inc., O'Brien & Gere Inc., of
North America (collectively "O'Brien & Gere"). The claims arise out of a contract in which
O'Brien & Gere agreed to design and install a baghouse and ash handling system at Barton
Brand's Bardstown facility. Barton Brands blames O'Brien & Gere for various problems which
arose after installation.

On January 8, 2008, Barton Brands amended its complaint to add claims for negligence
and negligent misrepresentation against Astec, Inc. ("Astec"). O'Brien & Gere has also filed a
cross-claim against Astec, seeking complete indemnity. Astec has now moved to dismiss Barton
Brands' claims and O'Brien & Gere's cross-claim against it. For the reasons discussed below,
the Court will sustain the motion to dismiss Barton Brands' claim for negligence against Astec,
but will deny the motions to dismiss Barton Brands' negligent misrepresentation claim and
O'Brien & Gere's cross-claim for indemnity.

I.

For purposes of the pending motions, a brief review of the facts will suffice.  Barton Brands owns and operates a distillery and bottling plant in Bardstown, Kentucky.  On or about November 7, 2005, Barton Brands issued a request for bid, design, fabrication and installation of a coal-fired boiler Baghouse System at the distillery.[1]  O'Brien & Gere submitted the winning written proposal for the Baghouse System design and installation at a total cost of $1,250,928.00 and was awarded the contract in early 2006.  In conjunction with its proposal to Barton Brands, O'Brien & Gere asked Astec to provide O'Brien Gere a proposal and quotation for the design, manufacture, fabrication, installation, and start up of the baghouse and ash handling system at Barton Brands' facility.  Astec submitted two proposals to O'Brien & Gere on December 14, 2005 and January 16, 2006 and, according to Barton Brands, Astec "manufactured, . . . fabricated . . . installed and/or set up" the baghouse, dust storage, and dry scrubbing systems at the Barton Brands facility.

Barton Brands says that during fall 2006 the Baghouse System experienced four separate small fires and, on each occasion, it notified O'Brien & Gere and Astec of the situation and provided each an opportunity to inspect the system and its operations.  Barton Brands also says that O'Brien & Gere and Astec denied that the fires were caused by the Baghouse System's installation or design.  On December 5, 2006, there was a much bigger fire inside the Baghouse System, which rendered it "totally inoperable."  Barton Brands completely shut down its coal-fired boiler and the Baghouse System due to the damage and switched to natural gas in order to

---

[1]According to Barton Brands' Amended Complaint, "A baghouse is a pollution control device used to control particulate and other emissions."  The Baghouse System consists of a baghouse, a dust storage and ash handling system for the collection and disposal of ash from the baghouse, a dry scrubbing additive silo system, draft fan and discharge stack, and related electrical components, controls, monitors, and ductwork.  Pl.'s Resp. to Mot. to Dismiss Astec 11.

2

continue operating the distillery.  According to Barton Brands, an independent expert, Amerex

Environmental Systems ("Amerex") conducted an operational review and field inspection audit

and determined that the cause of the fires was the "numerous design, manufacture, fabrication,

and installation deficiencies by O'Brien & Gere and Astec." Pl.'s Am. Compl. ¶ 26.

      As a result of O'Brien & Gere's and Astec's alleged "wrongful actions," Barton Brands

claims to have incurred property damage, increased operating costs and other related out-of-

pocket costs.  Additionally, Barton Brands claims that its new coal-fired boiler baghouse may

not be operational in time to "cap out" of the Industrial Boiler MCAT Standard, which is

effective September 2007.

      Count VII ("Negligence") of the Amended Complaint alleges that Astec breached its

duty to Barton Brands "to provide a properly designed and fabricated, fully operational, defect

free Baghouse System which was compatible with Barton Brands' existing coal-fired boiler."

Count VII also claims that Astec was also negligent in "failing to determine the cause of the fires

. . . representing to Barton Brands that the cause of the fires was the operating conditions of

Barton Brands' coal-fired boiler . . . failing to warn Barton Brands . . . and misleading Barton

Brands concerning the cause of the fires."

      Count VIII ("Negligent Misrepresentation") alleges that "Astec made negligent, false,

statements to Barton Brands concerning its experience, the capabilities of the Baghouse System

and the compatibility of the Baghouse System with Barton Brands' existing coal-fired boiler and

related equipment" and made such statements to induce Barton Brands to select Astec's system.

Count VIII also alleges that Astec "made additional false statements to Barton Brands

concerning the cause of the fires occurring in [sic] within the Baghouse System," and that Barton

Brand  relied on such statements in deciding to continue to operate the system.

II.

Astec asks the Court to dismiss the negligence and negligent misrepresentation claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Such a motion requires this Court to construe the complaint in the light most favorable to Plaintiff, *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998), and to accept all the complaint's factual allegations as true. *Id.* The Court may not grant such a motion to dismiss based on disbelief of a complaint's factual allegations. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). Rather, the Court must liberally construe the complaint in favor of the party opposing the motion, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).

To determine whether Barton Brands has stated a claim, this Court must apply Kentucky law. *Erie Ry. Co. v. Tompkins*, 304 U.S. 64 (1938).  Ultimately, this Court must predict how Kentucky's highest court would rule and may disregard an intermediate state court decision if convinced that the highest court would decide otherwise.  *See Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

III.

 At the heart of the parties' disagreement is the operation of two inextricably intertwined concepts -- the economic loss doctrine and privity of contract.  As the Sixth Circuit has explained:

The economic loss rule bars recovery in tort for economic loss.  Economic

4

loss is both substantive loss in the value of a product caused ay a defect in that product (direct economic loss) and consequential loss flowing from the defect, such as lost profits (consequential economic loss). The economic loss rule marks the border between tort and contract law. Where tort law, primarily out of concern for safety, fixes the responsibility for a defective product directly on the parties responsible for placing the product into the stream of commerce, contract law gives the parties to a venture the freedom to allocate risk as they see fit. Were there no economic loss rule, 'contract law might drown in a sea of tort.'

*Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir. 2002)(quoting *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986)(citations omitted). As Justice Keller of the Kentucky Supreme Court has noted, the economic loss rule "is stated with ease but applied with great difficulty." *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 584 (Ky. 2004) (Keller, J., concurring)(quoting *Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc.*, 609 So.2d 1349, 1352 (Fla. Dist. Ct. App. 1992)).

The Court's consideration of these issues, and in particular the negligent misrepresentation claim, is guided by the Kentucky Supreme Court's recent decision in *Presnell*. In that case, a project owner entered into separate contracts with a contractor and a construction manager for work on a building project. There was no contract between the contractor and the construction manager. The contractor sued the construction manager for negligent misrepresentation and negligent supervision. With respect to these tort actions, the court explained that, "although privity is no longer required . . .'one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of the contract.'" *Id.* (quoting *Penco, Inc. v. Detrex Chem. Indus., Inc.*, 672 S.W.2d 948, 951 (1984)). Noting the lack of privity between the parties, the court observed that:

5

> unless [the construction manager] breached some duty to [the
> contractor] apart from its duties to [the project owner] under the
> contract - *i.e.* an independent duty - [the contractor], who was, at
> the most, an incidental beneficiary of the contract between [the
> project owner] and [the construction manager], cannot maintain an
> action in negligence against [the construction manager].

*Id.* at 579-80.  In considering the contractor's negligent misrepresentation claim, the court

adopted the standards set out in RESTATEMENT (SECOND) OF TORTS § 552 (1977)[2] and concluded

that "privity is not necessary," because "the tort of negligent misrepresentation defines an

*independent duty* for which recovery in tort for *economic loss* is available." *Id.* at 582 (emphasis

added). Notably, in *Presnell*, the contractor claimed "exclusively economic loss," which, in the

context of a services contract, the court defined as, "a monetary loss such as lost wages or lost

profits." *Id.* at 577 (quoting BLACK'S LAW DICTIONARY 530 (7th ed. 1999)).  The adoption of §

552 was consistent with the earlier prediction of  Federal District Judge Reed of the Eastern

District of Kentucky in the context of a services contract.  *See Ingram Indus., Inc. v. Nowicki*,

527 F. Supp. 683, 684 (E.D. Ky. 1981)(considering "the scope of liability of an accountant for

negligence causing loss to a third party" and concluding that "Kentucky would adopt the

_____

[2]Quoting §552 "Information Negligently Supplied for the Guidance of Others," *Presnell* defined negligent misrepresentation as follows:

(1) One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefits the duty is created, in any of the transactions in which it its intended to protect them.

*Id.* at 580 (quoting RESTATEMENT (SECOND) OF TORTS § 552 (1977)).

standards set out in [§ 552]").[3]

Barton Brands argues that because *Presnell* held that "privity is not necessary to maintain a tort action, and by adopting §552, we agree that the tort of negligent [mis]representation defines an *independent duty for which recovery in tort for economic loss is available,"* 134 S.W.3d at 582-83 (emphasis added), Barton Brands should be allowed to pursue such a claim against Astec. Astec counters that *Presnell*'s adoption of negligent misrepresentation in the context of a personal services contract does not mean that Kentucky courts would also recognize the claim in the context of a product liability case against a manufacturer. Astec directs the Court's attention to several cases outside the Sixth Circuit where state courts have rejected negligent misrepresentation claims in the context of defective products, as opposed to in the rendering of services. *See, e.g.Maynard Coop. Co. v. Zeneca, Inc.*, 143 F.3d 1099, 1102-03 (8th Cir. 1998)(finding that the distinction between the "*advice* given by [Defendant] and the *product* about which the advice is given is . . . a distinction without a difference."). And, as Astec points out, *Presnell* limited its holding to "the pleadings in this case and the limited facts developed to this point." *Id.* at 582.

The question that inevitably follows is whether *Presnell* signals that Kentucky courts would now also recognize negligent misrepresentation in the products liability context and in so doing would permit recovery for "purely economic loss" limited to "lost profits." Although the Court finds no Kentucky case which considers the viability of a negligent misrepresentation

---

[3] By contrast, in *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 955 F.2d 1043, 1053 (6th Cir. 1992), a products liability case, the Sixth Circuit had concluded that Kentucky "would not allow recovery under a theory of negligent misrepresentation." Similarly, prior to *Presnell*, this Court had concluded that a negligent misrepresentation claim would be precluded, as a matter of Kentucky law, by the economic loss doctrine. *Ohio Cas. Ins. Co. v. Vermeer Mfg. Co.*, 298 F. Supp. 2d 575, 579 (W.D. Ky. 2004).

claim in the context of a products liability case, it is helpful to review the underlying policy

objectives of applying the economic loss doctrine to commercial transactions.  As this Court has

previously observed:

> 1) it maintains the historical distinction between tort and contract
> law; 2) it protects parties' freedom to allocate economic risk by
> contract; and 3) it encourages the party best situated to assess the
> risk of economic loss, typically the purchaser, to assume, allocate,
> or insure against the very risk.

*Vermeer*, 298 F. Supp. 2d at 578 (citing *Hoover*, 276 F.3d at 848).  Significantly, *Presnell*

focused on the specific duties arising under §552 and concluded that those existed independent

of contractual obligations.  Moreover, the type of misrepresentation alleged by Barton Brands is

factually distinguishable from simple fraudulent inducement, which as this Court has previously

observed, is "essentially the defendant failing to meet the plaintiff's commercial expectations."

*Vermeer*, 298 F. Supp. 2d at 579.  True, part of the Barton Brands misrepresentation claims

could be framed as fraudulent inducement claims ("Astec made negligent, false, statements to

Barton Brands concerning its experience . . . intending to induce Barton Brands to select the

Baghouse").  Indeed if the allegations were so limited, the Court would have a more difficult

time concluding that the claim satisfied the elements of §552.  However, Count VIII also alleges

that Astec "made additional false statements to Barton Brands concerning the cause of the fires

occurring in [sic] within the Baghouse System," and that Barton Brand relied on such statements

in deciding to continue to operate the system.  Such a statement looks less like fraudulent

inducement, which would be inseparable from the essence of the parties' agreement.  Astec's

affirmative duty under § 552 not to supply *false information* would not lend itself as readily to

resolution through contract negotiation.

8

For these reasons, many of the policy reasons for invoking the economic loss doctrine would not seem to apply because the Kentucky Supreme Court has recognized the existence of a duty of care *independent* of contractual obligations. Specifically, here Barton Brands' complaint alleges that Astec made "false statements . . .concerning the cause of the fires."  The Court therefore concludes that under *Presnell*, such an allegation is sufficient to avoid dismissal for failure to state a claim for relief for negligent misrepresentation.[4]

## IV.

In contrast to its treatment of the negligent misrepresentation claim, the *Presnell* court affirmed the lower court's dismissal of the contractor's negligent supervision claim, saying that tort "does not articulate a claim that [was] independent of [the construction manager's] contractual duties." *Id.* at 582-83.  Notably, the *Presnell* court rested the dismissal on the lack of privity between the parties and avoided mention or discussion of the economic loss rule, despite urging by Justice Keller in his concurring opinion.  As a threshold matter, Astec argues that Barton Brands cannot bring a claim for negligence because, as in *Presnell*, the allegations do not "articulate a claim that is independent of" Astec's contractual duties to O'Brien & Gere.  *See Presnell*, 134 S.W.3d at 582.  This Court must therefore determine whether Barton Brands' negligence claim describe duties that are "independent" of Astec's contract with O'Brien & Gere or if the alleged "negligence . . . consists merely in the breach of the contract." *Id.* at 579-80.

Among the allegations described in its negligence claim, Barton Brands says that Astec "breached its duty to Barton Brands by failing to determine that the cause of the fires in the

---

[4]Astec argues that the negligent representation claim should fail because it has not been pled with particularity.  Def.'s Mot. to Dismiss. Am. Compl. 11.  The Court disagrees and finds that Astec has provided fair notice of its claim and the grounds on which it rests.

baghouse was the improper and defective design and construction of the baghouse." Absent a contract with Barton Brands, Astec did not owe Barton Brands an affirmative duty to determine the cause of fires. Such an obligation, if it existed at all, would have arisen from the contractual relationship between Astec and O'Brien & Gere, to which Barton Brands was not a party. Therefore, Barton Brands may not pursue a negligence claim against Astec based solely on its failure to determine the cause of the fires in the baghouse since Astec was under no contractual duty to Barton Brands to provide this service. Thus, to the extent that Barton Brands makes such a claim, that allegation fails under *Presnell* since it does not articulate an duty independent any contract with O'Brien & Gere to which Barton Brands was not a party.

The Court now turns its attention to the remaining allegations in Barton Brands' negligence claim. Although it does not purport to bring its claim pursuant to the Kentucky Product Liability Act, the Court agrees with Astec that the remaining allegations of the negligence claim are most properly characterized as a "products liability for the alleged negligent design, fabrication and supplying of the Baghouse System" and as a "products liability claim for the alleged negligent failure to warn that the design and construction of the Baghouse System could result in fires."

In a non-commercial transaction this Court has recognized that under Kentucky product liability law, a manufacturer "has a non-delegable duty to provide a product reasonably safe for its foreseeable uses, a duty not abrogated by warning to the immediate purchaser." *Weixler v. Paris Co., Inc.* 2003 WL 105503 (W.D. Ky. 2003)(quoting *Montgomery Elevator Co. v. McCullough*, 676 S.W.3d 776, 782 (Ky. 1984)). Thus, the question presented here is whether *Presnell* (a services contract case) should cause this Court to reconsider its and the Sixth

10

Circuit's prior predictions that the economic loss doctrine would bar a claim for a negligence

claim in a *commercial* products liability case.  *See, e.g. Hoover*, 276 F.3d at 848; *Miller's Bottled*

*Gas, Inc. v. Borg-Warner Corp.*, 955 F.2d 1043, 1049-50 (6th Cir. 1992); *Vermeer*, 298 F. Supp.

2d at 577; *see also Falcon Coal Co. v. Clark Equip. Co.*, 802 S.W.2d at 948-49 (Ky. Ct. App.

1990)(not permitting recovery against a manufacturer for the economic loss cause when a front-

end loader caught fire and destroyed itself).

Here, the Court finds Justice Keller's concurrence in *Presnell* helpful in understanding

how the reasoning in the majority *Presnell* opinion would apply to the commercial products

liability context.  Justice Keller wrote:

> The question, thus, is not whether the damages are physical or
> economic.  Rather the question of whether the plaintiff may
> maintain an action in tort for purely economic loss turns on the
> determination of the source of the duty [the] plaintiff claims the
> defendant owed.  A breach of a duty which arises under the
> provisions of a contract between the parties must be redressed
> under contract, and a tort action will not lie.  A breach of duty
> *arising independently* of any contract duties between the parties,
> however, may support a tort action. . . .The phrase "economic loss
> rule" necessarily implies that the focus on the inquiry under its
> analysis is on the type of damages suffered by the aggrieved
> party.  However, the relationship between the type of damages
> suffered and the availability of a tort action is inexact at best. . .
> confusion can be avoided, however, by maintaining the focus on
> the source of the duty alleged to have been violated.

*Presnell*, 134 S.W.3d at 589  (Keller, J., concurring).  Justice Keller's explanation is consistent

the earlier prediction of the Sixth Circuit that, although Kentucky has declined to extend the

economic loss rule to consumer purchases, *see, e.g. Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d

921 (Ky. 1994), the economic loss rule would "bar a tort claim in a case that involves a business

purchase." *Hoover*, 276 F.3d 845, 849 (6th Cir. 2002).  The "source of the duty" would not lie in

11

common law or under statute, but rather as a result of a contract.  Therefore, because the

economic loss rule would bar a tort claim based on destruction to a defective product, there

could be no "duty" existing independent of contractual obligations.

Next the Court addresses Barton Brands' argument that because it is claiming damage to

property other than defective product (the baghouse bags purchased from third parties), the

economic loss rule should not bar recovery.  In the context of products liability, prior to *Presnell*,

the Sixth Circuit had described economic loss as "both loss in the value of a product caused by a

defect in the product (direct economic loss) and consequential loss flowing from the defect, such

as lost profits (consequential economic loss).  *Hoover,* 276 F.3d at 848 (citing Louis R. Frumer

& Melivn I. Friedman, Products Liability, § 13.11[1] (2000)).  In its Amended Complaint,

Barton Brands seeks compensation from O'Brien & Gere for "lost profits, damages, increased

production costs, replacement costs and expenses, prejudgment interest, out-of-pocket

expenses."  Barton Brands also says that the final catastrophic fire "damaged thousands of

dollars of the bags in the baghouse which Barton Brands had purchased from third parties, all

property separate from the product itself." Pl.s' Resp. to Astec's Mot. to Dismiss 11.  With the

possible exception of the bags, all of the damage Barton Brands claims appears to fall within the

*Hoover* definition of economic loss.  But, as noted above, in *Presnell*, the Kentucky Supreme

Court allowed recovery for economic loss for a negligent misrepresentation claim, which it

defined to include "a monetary loss such as lost wages or lost profits." 134 S.W.3d at 577.

However, the Court is convinced that the differences between which damages are recoverable

under a claim for negligence as opposed to negligent misrepresentation depends on the source of

the duty.  It is therefore not inconsistent to find that the economic loss doctrine would bar

12

recovery in negligence but not negligent misrepresentation.

Recovery, in this case turns on "what, exactly, constitutes property 'other' than the defective product." *Bowling Green Mun. Util. v. Thomasson Lumber Co.*, 902 F. Supp. 134, 138 (W.D. Ky. 1995). The Sixth Circuit faced the question of whether component parts constituted part of a product and concluded "the Kentucky Supreme Court would hold that the product for economic loss rule purposes includes the entire unit for which a party to a complex commercial transaction has the ability to distribute risk by contract and insure against loss." *Hoover*, 276 F.3d at 849. Here, because the baghouse bags were stored inside the baghouse, the Court agrees with Astec that they were not separate from the Baghouse System, but rather constituted components, recovery of which would be barred by the economic loss rule.

Barton Brands' negligence claim seeks lost expectancy which arises "merely in the breach of a contract." Under *Presnell* and consistent with prior predictions of this Court and the Sixth Circuit, such a claim is not actionable under Kentucky law. While Barton Brands' claim for negligence against Astec fails, as noted above, the negligent misrepresentation claim survives.

V.

Finally, the Court considers Astec's motion to dismiss the cross-claim against it by O'Brien & Gere, which seeks complete indemnity from Astec in the event that liability is assessed against it by Barton Brands. Because the Court finds that Barton Brands' negligent misrepresentation claim survives, Astec does not cease to be a "co-party" and its Fed. R. Civ. P. 13(g) argument is inapplicable.

The Court further agrees with O'Brien & Gere, that liability to a plaintiff is not a

13

prerequisite for a viable indemnity claim against the ultimate responsible party.  *See, e.g. Degner v. Hall Contracting Corp.*, 27 S.W.3d 775, 782 (Ky. 2000); *see also Affholder v. Preston Carroll Co., Inc.*, 27 F.3d 232, 234 (6th Cir. 1994).  The Court has found that the economic loss doctrine does not bar Barton Brands' claim for negligent misrepresentation, and therefore Astec, as the common law indemnitee, could conceivably be held liable for O'Brien & Gere's negligence. *See, e.g. Hutt v. Gibson Fiber Glass Prods, Inc.*, 914 F.2d 790, 794 (6th Cir. 1990).

The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record