UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-78-H

BARTON BRANDS, LTD.                                                      PLAINTIFF

V.

O'BRIEN & GERE, INC. OF NORTH                                       DEFENDANTS
AMERICA, et al.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Barton Brands, Ltd. ("Barton Brands") filed suit alleging various causes of action against defendants O'Brien & Gere Engineers, Inc. and O'Brien & Gere Inc., of North America (collectively "O'Brien & Gere"). These claims arise from a contract between Barton Brands and O'Brien & Gere for the design and installation of a baghouse and ash handling system at Barton Brands' Bardstown facility. Later, Barton Brands amended its complaint to add claims against Astec, Inc. ("Astec") for negligence and negligent misrepresentation. On March 24, 2008, the Court dismissed Barton Brands' negligence complaint against Astec, but allowed the negligent misrepresentation claim to proceed. Now, Astec moves for summary judgment on Barton Brands' remaining negligent misrepresentation claim.

I.

Barton Brands owns and operates a distillery and bottling plant in Bardstown, Kentucky. On or about November 7, 2005, Barton Brands issued a bid request for design, fabrication, and installation of a coal-fired boiler baghouse system at the distillery.[1] Barton Brands awarded O'Brien & Gere the contract after it submitted the winning written proposal for the baghouse

---

[1] A baghouse is a pollution control device used to control the emissions, including particulate matter.

system design and installation.  As part of the proposal to Barton Brands, O'Brien & Gere asked Astec to provide a proposal and quotation for the design, manufacture, fabrication, installation, and start up of the baghouse system at the distillery.  O'Brien & Gere ultimately selected to use a baghouse designed by Astec.

Barton Brands alleges that during fall 2006 the baghouse system experienced four separate small fires.  Barton Brands claims that after every fire, it notified O'Brien & Gere and Astec of the situation and offered them an opportunity to inspect the system and its operation.  The parties debate the truth of this claim, but whether Barton Brands informed Astec after every fire has no effect on the Court's decision.  Finally, on December 5, 2006, a large fire in the baghouse system rendered it "totally inoperable."  Barton Brands completely shut down its coal-fired boiler and the baghouse system due to the damage and switched to natural gas in order to continue operating the distillery.  According to Barton Brands, Amerex Environmental Systems ("Amerex"), an independent expert, conducted an operational review and field inspection audit and determined that the design, manufacture, fabrication and installation of the Astec baghouse system caused the fires.

Barton Brands alleges that "Astec made negligent, false, statements to Barton Brands concerning its experience, the capabilities of the Baghouse System and the compatibility of the Baghouse System with Barton Brands' existing coal-fired boiler and related equipment" and made such statements to induce Barton Brands to select Astec's system.[2]  Barton Brands also alleges that Astec "made additional false statements to Barton Brands concerning the cause of

---

[2]In a memorandum opinion dated March 24, 2008, the Court strongly suggested that a claim for negligent misrepresentation based on a theory of inducement was not actionable, however, the Court did not dismiss the claim at that time.

2

the fires occurring in [sic] within the Baghouse System," and that Barton Brands relied on such statements in deciding to continue to operate the system.

Astec now moves for summary judgment on the negligent misrepresentation claims. Summary judgment is appropriate where there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

II.

While Kentucky courts may have recognized the tort of negligent misrepresentation for some time, the Kentucky Supreme Court officially recognized the cause of action in 2004. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 576 (KY 2004). In *Presnell*, the construction manager and contractor for a building project had no contract between them, only individual contracts with the property owner. However, after the project soured, the contractor sued the construction manager for negligent misrepresentation. The Kentucky Supreme Court held that negligent misrepresentation was actionable in Kentucky, and adopted § 552 of the RESTATEMENT (SECOND) OF TORTS as the standard for negligent misrepresentation. *Id*. Section 552 of the Restatement provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

RESTATEMENT (SECOND) OF TORTS § 552 (1977).[3] In adopting § 552, the Kentucky Supreme Court held "that the tort of negligent representation defines an independent duty for which recovery in tort for economic loss is available." *Presnell*, 134 S.W.3d at 578.

Here, Barton Brands claims two classes of misrepresentations. First, Barton Brands claims that Astec made statements regarding its experience and the capabilities of the baghouse system in an effort to induce Barton Brands to select Astec's system. Second, Barton Brands alleges that Astec made statements concerning the cause of the fires, and that Barton Brands relied on such statements in deciding to continue to operate the system. The Court will examine these two general classes of misrepresentations in turn.

A.

Barton Brands relies on a theory to prove negligent misrepresentation that goes as follows. Barton Brands hired O'Brien & Gere to design and install a baghouse system. O'Brien

---

[3] In its opinion, the Kentucky Supreme Court expressly adopted § 552 of the restatement, and used the comments as guidance for its opinion. Taking a cue from the Kentucky Supreme Court, this Court has also looked to the comments for guidance in the interpretation of the § 552 standard.

& Gere relies on the expertise of their vendors, and decided to use an Astec baghouse system. Thus by submitting a bid to O'Brien & Gere, Astec impliedly represented that its baghouse would meet all the needs of Barton Brands. Astec objects to this theory for several reasons. First, Astec says that even if it made a representation, it was made to O'Brien & Gere, not to Barton Brands. Astec argues that the false information must be supplied directly to Barton Brands in order for it to be actionable. While *Presnell* did involve circumstances where the defendant communicated directly to the plaintiff, Barton Brands cites an unpublished Kentucky Court of Appeals opinion holding that direct communication is unnecessary for a negligent misrepresentation action. Furthermore, the language of § 552 clearly states that liability may be founded on indirect communication. RESTATEMENT (SECOND) OF TORTS § 552(2)(a). The Court agrees that § 552 applies to more than merely direct statements, thus an indirect communication would not necessarily bar Barton Brands' suit.

Astec also says because Barton Brands predicates it's theory on *implied* representations, it faces a much tougher hurdle to overcome. This goes to the essence of the summary judgment standard and the definition of negligent misrepresentation. According to that standard, Barton Brands must be able to point to a genuine issue of fact. Here Barton Brands cannot point to any evidence of a representation made by Astec. Plaintiff has not brought any representation to the Court's attention about which a jury would be able to determine the falsity of the statement or the care Astec took in making the statement. Barton Brands has not established a genuine issue of fact as to statements made to induce it into purchasing the Astec baghouse.

B.

Barton Brands also claims that Astec made negligent representations regarding the cause of the fires. Unlike the situation discussed above, Barton Brands can identify specific representations made by Astec regarding the causes of the fires. Plaintiff can also identify representations made by Astec regarding ways to prevent the fires from occurring. Thus at first blush it seems that there is a genuine dispute about the facts. A jury could find that Astec negligently supplied information in the form of the statements Barton Brands alleges Astec made.

However, Barton Brands' claim must still meet the elements of § 552. The elements of the tort are laid out in subsection 1 of § 552. In order to prove a negligent misrepresentation, Barton Brands must show that in the course of Astec's business, or in any other transaction in which it had a pecuniary interest, it negligently supplied false information for the guidance of Barton Brands in its business transactions, which Barton Brands justifiably relied on to its detriment. RESTATEMENT (SECOND) OF TORTS § 552(1) (1977). Even assuming Astec provided false information, which Barton Brands justifiably relied on to its detriment, there are still two other issue to resolve.

The first issue is whether Astec had any pecuniary interest in the information it gave, or if it gave the information gratuitously. The Court ruled in a previous memorandum opinion that Astec did not have a duty to determine the cause of the fires. Barton Brands has not alleged that it payed Astec to inspect the baghouse and repair it, nor have they alleged that Astec and O'Brien & Gere had an agreement that Astec would inspect and maintain the baghouse. Without a legal duty requiring Astec to determine the cause of the fires or face the prospect of liability, or

a promise to pay Astec if it determined the cause of the fires, it appears that Astec gratuitously provided this information to Barton Brands. As such, Plaintiff has failed to satisfy the pecuniary interest element of § 552.

The second issue is whether Astec supplied the information for the guidance of Barton Brands in a business transaction. *See Ky. Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368, 372-73 (Ky. App. 2008) (dismissing a negligent misrepresentation action where the information was not supplied for the guidance of another in a business transaction). Here there appears to be no transaction at all, business or otherwise. Rather the information was supplied to Barton Brands solely for the guidance of preventing future fires in the baghouse. While few cases talk about what qualifies as a business transaction, at its core there must at least be a transaction. Here, Astec did not advise Barton Brands about what transactions to enter, nor did Barton Brands enter into any transactions in reliance on the information. Subsection (2) of § 552 highlights this fault. That subsection limits the damages recoverable under the section to loses incurred in a transaction. RESTATEMENT (SECOND) OF TORTS § 522(2). Since Barton Brands did not transact with anyone in reliance on the information supplied by Astec, it could not have suffered a lose in such a transaction. Thus, once again, Plaintiff has failed to establish that Astec's statements meet the requirements of § 552.

C.

It is perhaps worth noting that the Court's ruling places the parties in the positions they would typically be under contract law. Barton Brands, who has a contract with O'Brien & Gere, retains its direct cause of action against O'Brien & Gere. It does not however, have a cause of action against Astec, a party with which it did not contract. Furthermore, the Court's ruling has

7

not disrupted O'Brien & Gere's cross-claim against Astec, with whom it dealt. The tort of negligent misrepresentation offers an important cause of actions for parties who are not in privity with one another. Yet, the comments to § 552 make clear that this is a narrow cause of action specifically tailored to certain circumstances with restrained scope of liability. RESTATEMENT (SECOND) OF TORTS § 522, cmts. a, c, h, i, j. Plaintiff has not demonstrated that any representations made by Astec fit this narrow cause of action.

      IT IS HEREBY ORDERED that Astec's motion for summary judgment on Barton Brand's negligent misrepresentation claim is SUSTAINED and those remaining claims against Astec are DISMISSED WITH PREJUDICE. The contract claims against O'Brien & Gere remain.

      This is NOT a final order.

cc:    Counsel of Record