UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-78-H

BARTON BRANDS, LTD.                                                                           PLAINTIFF

V.

O'BRIEN & GERE, INC. OF NORTH                                                          DEFENDANTS
AMERICA, et al.

**MEMORANDUM OPINION**

Plaintiff Barton Brands, Ltd. ("Barton Brands") has alleged various causes of action against defendants O'Brien & Gere Engineers, Inc. and O'Brien & Gere Inc., of North America (collectively "O'Brien & Gere"), which procured and installed a pollution control system, known as a baghouse, at Barton Brands' Bardstown facility. Later, Barton Brands amended its complaint to add claims against Astec, Inc. ("Astec"), which designed the baghouse. O'Brien & Gere also filed cross-claims for indemnity against Astec.

In an order dated April 15, 2009, the Court dismissed most Barton Brands' claims against Astec, but allowed O'Brien & Gere's cross-claims to proceed. Now, Astec and O'Brien & Gere have moved to exclude the expert testimony of Barton Brands' two experts and for sanctions against Barton Brands due to the spoliation of certain evidence, that being the destruction of the baghouse. Finally, O'Brien & Gere has moved for summary judgment on Barton Brands' claims.

I.

The Court is familiar with the evidence having considered some related issues in Memorandum Opinions dated March 25, 2008, and April 15, 2009. Nevertheless, the Court will

include another summary of some relevant facts.

Barton Brands owns and operates a distillery and bottling plant in Bardstown, Kentucky. In November, 2005, Barton Brands issued a bid request for design, fabrication, and installation of a coal-fired boiler baghouse system at the distillery and eventually issued purchase orders to O'Brien & Gere to perform the work. As part of its proposal to Barton Brands, O'Brien & Gere asked Astec to provide a proposal for the design, manufacture, fabrication, installation, and start up of the baghouse system at the distillery. Barton Brands claims that O'Brien & Gere made other representations about the baghouse. Ultimately, O'Brien & Gere used an Astec baghouse for the project.

After completion of the project in the fall of 2006, Barton Brands experienced four separate small fires within the baghouse system. Barton Brands claims that after every fire, it notified O'Brien & Gere and Astec and offered them an opportunity to inspect the system and its operation. The parties debate the truth of this claim, but whether Barton Brands informed Astec after every fire is ultimately irrelevant. On December 5, 2006, a large fire in the baghouse system rendered it "totally inoperable." As a consequence, Barton Brands shut down its coal-fired boiler and the baghouse system and switched to natural gas for operating the distillery.

Immediately after the fire, Barton Brands retained Rick Berry ("Berry"), who worked for Amerex Environmental Systems ("Amerex"), to conduct an operational review and field inspection audit of the baghouse. Berry conducted this review within two weeks after the fire and reported on his findings. On February 15, 2007, Barton Brands filed suit against O'Brien & Gere, alleging breach of contract (Count I), declaratory relief (Count II), negligence ( Count III), negligent misrepresentation (Count IV), breach of express warranty (Count V), and breach of

implied warranty (Count VI).  O'Brien & Gere counterclaimed against Barton Brands for the remaining amount of the contract due.  In June 2007, Barton Brands destroyed the baghouse and replaced it with a different baghouse which Amerex designed.  Barton Brands did not give notice to Defendants or their counsel of their specific plan to destroy the baghouse.

The parties set a discovery schedule until August 2007.  A trial date was set for October 20, 2008.  The discovery schedule allowed Plaintiff until February 15, 2008, to file their expert disclosure.  On January 8, 2008, Barton Brands filed an amended complaint asserting claims against Astec.  On March 25, 2008, the Court dismissed these negligence claims against Astec.  On April 17, 2008, the Court approved an amended discovery schedule.  Barton Brands has named two other Amerex employees, John Foster and Anthony Andriola, as its experts in this case.  Foster and Andriola reviewed Berry's report and the photographs and video he took of the baghouse.  Foster and Andriola copied and adopted the Berry report with only a few changes.  Discovery was extended again until December 15, 2008, and shortly thereafter Astec initiated the current round of motions.  On April 15, 2009, the Court dismissed Barton Brands' negligent misrepresentation claim against Astec.

## II.

The Court has the power to impose an appropriate sanction when a party destroys evidence in a case.  In the Sixth Circuit, federal law governs spoliation sanctions. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009).  Specifically, the court said "a proper spoliation sanction should serve both fairness and punitive functions." *Id.* (citing *Vodusk v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).  Furthermore, "the severity of the sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652-53.

No one disputes that the baghouse fire is a potential focal point of the evidence in this case and that Barton Brands destroyed the baghouse in June 2007. Barton Brands' claims focus upon the design, construction and operation of the baghouse, as well as statements of O'Brien & Gere concerning it. Evidence about the cause of the fire could play an important, though not necessarily essential, role in resolving these issues.

To determine whether any sanction is appropriate, a court should consider: 1) the degree of fault of the spoliating party; (2) the degree of prejudice suffered by the non-spoliating party; and (3) the effectiveness of lesser sanctions. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3rd Cir. 1994). Prejudice occurs where "the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). The Court has broad discretion to impose different varieties of sanctions, including granting summary judgment, dismissing a case, or imposing a negative inference on the party who destroyed the evidence. *Adkins v. Wolever*, 554 F.3d at 653.

The Court finds no reason to conclude that Barton Brands destroyed the baghouse to intentionally undermine O'Brien & Gere's defense ability. Barton Brands had a legitimate need to rebuild or replace the baghouse. Destruction of the fire site was inevitable and ultimately necessary. However, the manner of its actions within the context of this litigation raises serious concerns of unfairness to O'Brien & Gere.

Barton Brands should have notified the other parties and given them a time certain within which to complete their own investigation. The letters which Barton Brands sent in January are too ambiguous and non-specific to do this. O'Brien & Gere had no reason to believe that

destruction was imminent. Counsel for Barton Brands declined to say whether they had knowledge of their client's actions. However, the absolute responsibility of a party in these circumstances is to notify opposing counsel in a timely fashion of the intended destruction. Failure of such notice created the potential for unfair prejudice to O'Brien & Gere as well as to Astec.

Astec was not even a party to the case in June, 2006. In fact, Barton Brands did not join Astec as a defendant until approximately six months after it had destroyed the baghouse. The parties had yet to agree upon a litigation schedule.[1] As a result, neither O'Brien & Gere nor Astec had a fair notice to examine the baghouse to its destruction. Knowing the cause of the fire could be important evidence in a majority of Barton Brands' claims. Thus, the spoliation has prejudiced both O'Brien & Gere and Astec by compromising their ability to determine the cause of the fire and to put on a defense to Barton Brands' allegations. The degree of that compromise can now never be known with certainty.

Defendants asks for dismissal of Barton Brands' claims. Such a sanction would be too harsh. Nonetheless, at least Barton Brands should be enjoined from benefitting from destruction of the fire evidence. Consequently, the Court finds that Barton Brands be prevented from introducing expert testimony regarding the cause of the particular fire in question. The Court will exclude any expert testimony from Barton Brands regarding the cause and origin of the fire and will consider an appropriate jury instruction.

III.

---

[1] It is a fair point that O'Brien & Gere could have hired its own expert at any time prior to June 2006. However, their delay in having an expert investigate the scene is less egregious than Barton Brands' failure to provide notice of its intent to remove the baghouse.

O'Brien & Gere and Astec also move to exclude the expert testimony of John Foster and Anthony Andriola. To some extent this motion concerns evidence already excluded under spoliation. Nevertheless, the consideration that follows will reinforce the ultimate result.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has developed guidelines for courts performing their gatekeeping function about expert testimony in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and its progeny. First, the testimony must be useful to the trier of fact in deciding an issue or understanding other evidence. Second, the expert must be qualified. Third, the testimony must be reliable. Reliability requires that the evidence is based on facts and is the product of a reliable methodology. A trial judge's role is to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

Foster and Andriola address two distinct issues: (1) the defective design of the O'Brien & Gere baghouses installed at Barton Brands; and (2) the cause of the December 5, 2006 fire. Their testimony meets some, but not all of the *Daubert* conditions. The Court will first consider whether Foster and Andriola qualify as experts in the field of fire origin and cause. Neither are certified by reason of education, experience, or training with regard to fire origin and cause. Neither were hired to determine the actual cause of the December 5 fire. That issue was outside

the scope of their retained services an their expertise. Perhaps not surprisingly, both Foster and Andriola say in their depositions that they are not fire origin or cause experts.

Barton Brands retained Foster and Andriola solely to investigate and review the design of the baghouse and its relationship to the fire. To do so, Foster and Andriola looked only at the design of the baghouse, and made no effort to investigate any other possible causes. Identifying only one possible cause and failing to investigate other possible causes is not a particularly reliable methodology. In light of these facts, the Court finds that Foster and Andriola neither qualify as fire origin and cause experts, nor was their methodology reliable. For all these reasons, the Court will bar their testimony regarding fire causation.

Foster and Andriola also present testimony as experts concerning industry design standards for baghouses attached to coal-fired boilers. They fare much better in this area. Foster was an engineer and designer with respect to baghouses. He has the expertise to give the opinions set forth in Section 3.0 of the expert report. Overall, the testimony of at least Foster appears grounded in the special experience and knowledge he gained through many years working for Astec. As a general matter, Foster can give the testimony contained in Section 3.0 of the report.

IV.

Before reaching the individual counts, the Court will address O'Brien & Gere's argument that Kentucky's Middleman Statute, KRS § 411.340 bars all of Barton Brands' claims. KRS § 411.340 states:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in

7

> its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

KRS § 411.340.

By the clear language of the statute, KRS § 411.340 applies only to wholesalers, distributors, and retailers, i.e. resellers. O'Brien & Gere does not qualify as any of these things. Rather, O'Brien & Gere acted as a general contractor for the baghouse project. Generally, O'Brien & Gere is not in the business of purchasing baghouses and reselling them to others. Instead, O'Brien & Gere offers design and consultation services for clients. Furthermore, even if O'Brien & Gere qualifies as a reseller under the statute, KRS § 411.340 does not bar suits where the reseller knew or should have known that the product was in a defective condition, unreasonably dangerous to the user. Barton Brands alleged that the Astec baghouse was defectively designed and unreasonably dangerous when coupled with its existing systems. Further, Barton Brands has alleged that O'Brien & Gere breached an express warranty, which would preclude application of the middleman statute.

V.

Barton Brands alleged six separate causes of action against O'Brien & Gere in its Second Amended Complaint. Counts I and II concern the contract claims, Count III alleges negligence; Count IV covers negligent misrepresentation; and Counts V and VI allege breach of certain express and implied warranties. Clearly, Barton Brands has asserted a mix of tort and contract

claims. The tort claims are subject to the most significant objections and the Court will consider those first.

A.

Count III alleges that O'Brien & Gere acted negligently in the selection and construction of the baghouse. This is essentially a products liability claim at its core. In an opinion dated March 24, 2008, the Court dismissed Barton Brands' negligence claims against Astec because its claims do articulate duties independent from Astec's contractual obligations to O'Brien & Gere. Moreover, to the extent Barton Brands' allegations are essentially a products liability claim, the economic loss rule would bar such claim in a commercial products liability action as here.

The research and logic which led the Court to these conclusions are complicated by the need to predict the future course of decision making among Kentucky courts and by the imponderables of the economic loss rule itself. Nevertheless, the Court is satisfied that its conclusions are as reasonable and fair as possible under the existing circumstances. That same logic applies with even greater force to Barton Brands' negligence claims against O'Brien & Gere. Here, Barton Brands bases its negligence claims upon the duties created by the contract between Barton Brands and O'Brien & Gere. In light of this fact, and the Court's previous ruling, the Court will dismiss Barton Brands' negligence claims.

B.

Count IV alleges that O'Brien & Gere made negligent misrepresentations and that Barton Brands relied on these statements to its detriment. Barton Brands also has a negligent misrepresentation claim against Astec. As the Court said in its previous memorandum opinion, the tort of negligent misrepresentation derives from a duty independent of contract. Thus the

economic loss doctrine alone will not bar a negligent misrepresentation claim. Now the Court considers those claims in light of the discovery and the Court's evidentiary rulings in this Memorandum Opinion.

The Kentucky Supreme Court has adopted § 552 of the RESTATEMENT (SECOND) OF TORTS as the standard for negligent misrepresentation. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 576 (Ky. 2005). Section 552 of the Restatement says:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552 (1977). The Court has also pointed out that the cause of action is a narrow one, primarily designed for those parties not in privity of contract. Typically parties to a contract will set out their representations in writing, and when a dispute arises regarding those representations a party may sue according to the contract. This often obviates the need for a cause of action for negligent misrepresentation.

Here, Barton Brands' alleges negligent misrepresentations concerning (1) O'Brien & Gere's expertise and the suitability of the Astec baghouse and (2) the causes of earlier fires in the baghouse. The first set of misrepresentations sounds more like a fraudulent inducement claim. The Court previously expressed skepticism regarding fraudulent inducement claims masquerading as negligent misrepresentation claims, suggesting such claims may not meet the standards set out in the RESTATEMENT (SECOND) OF TORTS § 552.

Barton Brands claims that O'Brien & Gere held itself out as an expert in the field of

baghouse design and represented that it would supply a baghouse that would work with Barton Brands' existing system. The problem is one of causation. Barton Brands would like to argue that the baghouse caught on fire, because it was not correctly designed in order to work with the existing system. Under the law of this case, however, it cannot do so because the Court has already excluded all expert testimony about the cause of the December 5 fire, due both to Barton Brands' spoliation of evidence and failure of its expert witnesses.

The second set of misrepresentations directly concerns the causes of earlier fires in the baghouse. Without any testimony regarding the cause of these fires or the December 5 fire, however, a jury could not conclude that O'Brien & Gere made any negligent misrepresentations that resulted in harm to Barton Brands. Without such evidence, no reasonable jury could find that Barton Brands detrimentally relied on the representations by O'Brien & Gere and, that as a result of this reliance, the baghouse caught on fire at a later date.

The Court will dismiss the negligent misrepresentation claims against both Defendants.

C.

Counts I and II claim that O'Brien & Gere breached its contract and seeks damages and declaratory relief. Barton Brands and O'Brien & Gere had an extensive business relationship. For over a year, O'Brien & Gere evaluated Barton Brands' air pollution control problems and made various recommendations to address them. On December 15, 2005, O'Brien & Gere submitted a "Proposal for the Design and Installation of a Coal-Fired Boiler Baghouse and Ash Handling System" at the Bardstown distillery (the "Proposal"). Based primarily upon the Proposal and the representations contained in it, Barton Brands issued a series of purchase orders to O'Brien & Gere to install the system and equipment which the Proposal described. Barton

Brands' contract claim is based upon O'Brien & Gere's failure to provide a functioning baghouse that would work "as intended" within Barton Brands' existing operations.

The evidence of record is certainly sufficient for the Court to find that the parties entered into an agreement evidenced by a series of writings.  The evidence may be disputed as to the precise representations and knowledge of each party.  However, the evidence of their agreements and Foster's opinions in Section 3.0 of the expert report could lead a reasonable jury to conclude that O'Brien & Gere breached its promise to provide a baghouse which worked as intended.

The Court has already excluded all of Barton Brands' expert testimony regarding the cause of the fire.  The consequence of this ruling is that Barton Brands cannot show that a defect in the baghouse design actually caused the fire.  The damages arising from a breach of contract are more limited than those from a fire caused by the defective baghouse.  Consequently, Barton Brands cannot seek damages such as lost profits or business interruption of any kind.

Barton Brands also alleges that O'Brien & Gere breached its contractual duty to provide a baghouse that would reduce emissions to a specific level.  However, no one tested the level of emissions before the destruction of the bag house and there is no evidence that the baghouse failed to reduce emissions to the required level.   Therefore, the contract claim cannot proceed on that basis.

D.

Counts V and VI allege that O'Brien & Gere breached its express and implied warranties. These warranties for the most part track Barton Brands' contract claims.  Barton Brands claims that O'Brien & Gere expressly warranted that the baghouse would conform to the contract specifications.  To that extent the warranty claim is subsumed into its contract claims.  The Court

is not clear as to the nature of the implied warranties, other than that the baghouse was designed and constructed so as to perform its intended functions. The Court will listen to the evidence at trial before deciding whether an implied warranty claim is permissible.

Once again, Barton Brands claims that the baghouse was not properly designed to work with Barton Brands' existing boiler system, and as a result, the baghouse was destroyed. Since there is no evidence from which a jury could conclude that the design of the baghouse caused the fire, summary judgment in favor of O'Brien & Gere is appropriate.

Barton Brands has also alleged that O'Brien & Gere breached an implied warranty that the baghouse would reduce emissions to a certain level. Again, because the baghouse was destroyed before the emissions were ever tested, there is no evidence supporting Barton Brands' claim that the baghouse did not reduce emissions to the specified level.

## VI.

The claims remaining lie essentially in contract. Barton Brands claim is that O'Brien & Gere agreed to provide a baghouse which complied with various written and, perhaps, implied warranties, and which could perform its intended function within the Facility. The test of this claim will depend whether the jury believes the design criticisms set out in Section 3.0 of the expert report and whether these items make the baghouse unfit to perform in the manner the agreements provide.

O'Brien & Gere's indemnity claim will depend on its agreements with Astec and whether the defects in O'Brien & Gere's performance can be blamed on Astec. In any event, the damages under these rulings is the total amount Barton Brands paid to O'Brien & Gere and any consequential damages such as removal of the Astec baghouse.

13

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record