

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-78-H

BARTON BRANDS, LTD.                                                PLAINTIFF

V.

O'BRIEN & GERE, INC. OF NORTH                         DEFENDANTS
AMERICA, et al.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Barton Brands and Defendant O'Brien & Gere have been involved in an unusual

litigation concerning the design of a pollution control system and "baghouse" at Barton Brands.

What began primarily as a products liability and breach of warranties case has changed

somewhat due to Plaintiff's spoliation of certain evidence, which required the limitation of

evidence about a fire.  The unusual circumstances in this case make determining the proper

measure of damages particularly difficult.  Just prior to trial, Plaintiff sought to introduce a new

measure of damages, predicated on a theory not previously advanced.  The Court has discussed

all of these issues on the record at great length and ruled from the bench.

The Court found that the case should proceed along the lines of the breach of warranty

claims and that Plaintiff may not alter its theory of recovery at this late stage.  Finally, the Court

describes the appropriate measure of damages in these unusual circumstances.  The comments

here should supplement and add to an understanding of the Court's reasoning.

I.

Defendant moved for a directed verdict at the close of all the proof.  The most significant

of the warranties is the implied warranty of fitness for the intended use of the baghouse.

Defendant certainly warranted that its design was sufficient to operate properly and accomplish Plaintiff's objectives.  Plaintiff has introduced evidence that the design was so flawed that it could not accomplish the goals of the baghouse with Plaintiff's facility.  Upon review of the evidence, the Court concludes that a reasonable jury could find that (1) Defendant made implied warranties; (2) it may have breached various of these warranties; and (3) Plaintiff suffered damages as a consequence.

Plaintiff's claims under express warranty are somewhat less clear.  Plaintiff alleged certain statements made by Defendant, that its claims amounted to express warranties.  Plaintiff claims Defendant warranted (1) that the baghouse would work with the existing coal-fired boiler; (2) that the "technical solution" for the project included a pulse-jet baghouse as described in its proposal; and (3) that it would deliver a sound, efficient, and fast-tracked solution for Plaintiff.  Plaintiff has put into evidence the issues of whether Defendant made these warranties and whether Defendant breached these warranties by delivering the baghouse it did.  Nevertheless, Defendant's statements that the baghouse was the "technical solution" and that it would deliver a "sound, efficient, and fast-tracked solution" for Plaintiff amount to mere puffery.  These are unmeasurable statements of opinion and do not create an express warranty.

A statement that a certain good is compatible with the buyer's existing property can create an express warranty.  See *Art Hill, Inc. v. Heckler*, 457 N.E.2d 242, 244-45 (Ind. App. 3 Dist. 1983).  However, it is not at all clear that O'Brien & Gere representatives made such a direct warranty.  They made only statements about their experience.  In any event, all parties seemed to agree that this would create the same issue as the implied warranty.  The Court concludes that any general statements about the sufficiency of the baghouse design only support

2

the existence of an implied warranty of fitness for a particular purpose.

II.

During the course of litigation, Plaintiff repeatedly represented that the case centered on the breach of warranty cause of action.  Its discussion of damages reflected the damages described in § 2-714 for accepted goods of the Uniform Commercial Code, codified by statute in Kentucky as KRS § 355.2-714 ("§ 714").  In Plaintiff's proposed jury instructions, Plaintiff presents its damages, for the first time, according to §2-711 of the Uniform Commercial Code, codified as KRS § 355.2-711 ("§ 711") and KRS § 355.2-712 ("§ 712"), which describe remedies where the buyer rejected or revoked acceptance of goods.  Defendant objects to the instruction on a remedy under § 711.

Upon reflection, sound procedural and fairness concerns counsel against allowing Plaintiff to change its cause of action or remedy at this late date.  Sections 2-711 through 2-714 of the U.C.C. describe the remedies available to buyers after a breach of contract.  Buyers who have accepted, and not rejected or revoked, may claim damages under § 2-714.  White & Summers, UNIFORM COMMERCIAL CODE: PRACTITIONER TREATISE § 10-1.  On the other hand, to claim remedies under § 2-711 buyers must either reject goods or revoke acceptance of them.  *Id.* When a seller makes delivery, as here, a buyer may recover under § 711 only where "the buyer rightfully rejects or justifiably revokes acceptance...." In that way, the remedies are mutually exclusive.  *Id*; *Baker v. Wade* 949 S.W.2d 199, 201 (Mo. Ct. App. 1997).  An experienced panel of the Kentucky Court of Appeals adopted this position in a well-reasoned though unpublished opinion.  *Thomas & Betts Corp., Inc., v. A & A Mech., Inc.*, 2004 Ky. App. LEXIS 339,*10-11.  This Court believes that this opinion expresses a sound view and is a good indication of how

3

Kentucky courts would hold.  Although the remedies are mutually exclusive, plaintiffs, in certain circumstances,  may plead each in the alternative.  FRCP § 8(d)(2).  In our case, however, Plaintiff has not done so.

From the inception of this case, until one week prior to trial, Plaintiff has pursued it as a breach of warranty claim of an accepted good.  It now seeks to pursue the alternative theory that it never accepted the baghouse.  Neither Plaintiff's complaint nor its subsequent actions in pursuing this litigation ever indicated that Plaintiff was contesting its actual acceptance of the baghouse.  Rather, Plaintiff framed this case from the beginning as one for breach of warranty. As the Kentucky Court of Appeals said, "breaches of warranty damages are available only if the buyer accepts the goods and not if the goods are rejected."  *Thomas & Betts Corp., Inc.,* 2004 Ky. App. LEXIS 339,*10-11.  Thus reading the complaint, one would conclude that Plaintiff was alleging it had accepted the baghouse, since it was pursuing remedies it could only obtain if it had accepted.

The absence of an alternative pleading is significant because "the remedy of rejection or revocation of acceptance is entirely inconsistent with the remedy for breach of warranty."  *Id.* This reading suggests that the breach of warranty is a separate cause of action from a cause of action for rejection or revocation of acceptance.  Recovery under § 711 not only presents a different legal theory than breach of warranty, but it is also founded on different facts than those required for recovery under § 714.  Plaintiff did not express any theory of rejection or revocation of acceptance in its complaint, amended complaint, or second amended complaint.  Furthermore, Plaintiff did not allege a single fact in any of these complaints concerning either its acceptance or rejection of the baghouse.

4

In order to proceed under any theory, moreover, a plaintiff must give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009). Further, Plaintiff must assert more than conclusory statements; it must provide factual allegations that make the claim plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Initially, Plaintiff did not appear to contest the issue of acceptance at trial. To proceed with a new legal theory, based on a different set of facts, which provides for a different remedy, a week before trial, would unfairly prejudice Defendant. On this basis alone, the Court properly exercises its discretion to instruct the jury as under § 714.

III.

Even if Plaintiff did proceed under this new theory, as a matter of substantive law and evidence, the Court concludes that Plaintiff would not qualify for the remedies under KRS § 355.2-711. As stated above, to obtain a remedy under KRS § 355.2-711, the Plaintiff must have either rejected the goods entirely or revoked acceptance.

Plaintiff's primary argument now is that it is entitled to these remedies because it never accepted the goods. Nevertheless, KRS § 355.2-711 clearly conditions its remedies on rejection, not a lack of acceptance. The Court agrees with Plaintiff that it could reject goods prior to acceptance even if the goods had undergone a substantial change. However, once the buyer has accepted, it may revoke acceptance but it may not reject. See KRS § 355.2-602; KRS § 355.2-608. The evidence shows that January 26, 2007, is the earliest Plaintiff can claim either to have

5

revoked its acceptance or rejected it.[1]  As the Court said above, Plaintiff failed to plead any facts tending to show it had rejected the goods prior to this time.

Looking at the available evidence, the Court concludes that as a matter of law Plaintiff accepted the baghouse prior to the fire on December 5, 2006.  KRS § 355.2-606(1)(b) provides that acceptance occurs where the "buyer fails to make an effective rejection" after a reasonable opportunity to inspect goods.  Here, O'Brien & Gere had completed all of its work, except for responding to complaints.  Plaintiff took delivery of the baghouse and used it for several months. While Plaintiff may have expressed complaints about the baghouse, this is not a rejection.  The Court concludes that several months of daily operation and use constitutes a reasonable opportunity to inspect the goods and reject them.  Plaintiff had complete control and use of the entire baghouse system and certainly had undertaken the risk of their safekeeping.  Plaintiff accepted the goods under KRS § 355.2-606(1)(b).

Plaintiff argues that under the contract acceptance can only occur after the final stack test, which never took place.  The Court agrees that parties may substitute their own acceptance terms for the U.C.C.'s default position.  Here, however, the parties never specified that completion of the stack test was the exclusive mode of acceptance.  The Court interprets the Barton Brands Purchase Order, by its terms, to be the complete agreement among the parties. O'Brien & Gere's subsequent acceptance merely added conditions for payment.  The substantial completion of the "baghouse" project and Plaintiff's exercise of control and use of it far outweigh the absence of the successful stack test as indication of acceptance.

---

[1] In a letter dated January 26, 2007, Plaintiff's counsel wrote to various O'Brien & Gere officials that in light of serious design deficiencies in the baghouse "Barton Brands hereby rejects the Baghouse System designed and installed by O'Brien & Gere and revokes any acceptance thereof."

Plaintiff contends that *United Air Lines, Inc. v. Conductron Corp.*, 387 N.E.2d 1272 (1979), and other cases, stand for the proposition that some products require lengthy inspection periods, and as such, possession and use of the baghouse did not constitute acceptance. However, the Court does not believe that these cases mandate the same result here. The contract at issue in *United Air Lines* contemplated this six-week testing period, and expressly provided that it did not constitute acceptance. *Id.* at 1282. Plaintiff cites a line of similar cases in its brief to the Court on the issue of risk of loss prior to acceptance. These cases are all distinguishable from the instant case for the same reasons as *United Air Lines*. The cases involve either a shorter period of possession, a contract provision exclusively conditioning acceptance on some event, or an outright rejection.[2] Plaintiff's use here went beyond an inspection period and constituted an acceptance of the baghouse and a full integration of the air pollution system into its operations.

Any theory that Plaintiff revoked acceptance of the baghouse fails as a matter of law. Plaintiff does not claim it revoked acceptance of the baghouse before the fire. Under KRS § 355.2-608, a buyer may revoke acceptance of nonconforming goods "within a reasonable time after the buyer discovers or should have discovered the [noncomformity] and before any substantial change in condition of the goods which is not caused by their own defects." The December 5 fire constituted a substantial change in the baghouse. Here, Plaintiff cannot show that this substantial change resulted from the defects within the baghouse, because the Court has already excluded Plaintiff's expert testimony as a result of Plaintiff's subsequent spoliation of the baghouse. Since Plaintiff did not revoke acceptance before the fire and could not have

---

[2]See *Southland Mobile Home Corp. v. Chyrchel*, 500 S.W.2d 778 (Ark. 1973); *In re Thomas*, 182 B.R. 347 (Bankr. S.D. Fla. 1995); *Jakowski v. Carole Chevrolet, Inc.,* 433 A.2d 841 (N.J.Super. 1981)); *Graybar Electric Co. v. Shook*, 195 S.E.2d 514 (N.C. 1973); *William F. Wilke, Inc. v. Cummins Diesel Engines, Inc.*, 250 A.2d 886 (Md. 1969); *Moses v. Newman*, 658 S.W.2d 119 (Tn. App. 1983).

revoked acceptance after the fire, the only way Plaintiff could qualify for the remedies under KRS § 355.2-711 would be to reject the goods.  If Plaintiff could prove that the defects caused the fire, it could have revoked acceptance after the fire and pursued remedies under § 711. KRS § 355.2-608(2). However, the Court's sanctions, due to Plaintiff's spoliation of evidence, precluded Plaintiff from arguing that the defects in the baghouse caused the fire.

The Court finds as a matter of law that Plaintiff accepted the baghouse prior to its destruction by fire.  As a corollary, Plaintiff did not, as a matter of law, reject the baghouse prior to its acceptance.  Finally, as a matter of law, Plaintiff did not revoke its acceptance, if it did at all, until after the baghouse's destruction by fire.  Subsequently, Plaintiff treated the baghouse as its own property, destroying it without notifying Defendant, and, thus, eliminating any opportunity of its repair.  As such, it would not meet the prerequisites for recovery under § 711.

IV.

A final question remains as to the proper measure of damages under § 714 in these somewhat unusual circumstances.  There is simply no easy answer.  Peeling away the arguments over pleadings, acceptance, rejection, and damages, the real issue of this case is whether the baghouse delivered to Barton Brands could have been modified to work properly with its system, or whether the defects required replacement of the entire baghouse.  The question is one of commercial reasonableness.  The Court concludes the appropriate measure of damages is the lesser of: 1) cost to retrofit the baghouse to work as warranted with Plaintiff's system, or 2) the difference between the value of the original baghouse and a baghouse as warranted by O'Brien & Gere.

KRS § 355.2-714 measure damages for breach of warranty as "the difference at the time

8

and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  In essence, this amounts to a snapshot of the value of the goods taken when it is accepted compared to the value of the goods as warranted.  Moreover, even if the jury finds a breach of warranty, the evidence reveals a legitimate dispute whether the design deficiencies could have been easily retrofitted or whether the original baghouse must be replaced.

Section 714(2) lays out the general rule setting out the measure of damages in a breach of warranty case.  It also contains a clause that says that "special circumstances" can show damages of a different amount. KRS § 355.2-714(2).  At least one court has used this provision to tackle the appropriate remedy in a case with similarly tough facts. See *Intervale Steel Corp. v. Borg & Beck Division, Borg-Warner Corp.*, 578 F.Supp 1081, 1090-91(E.D. Mich. 1984).  The Court agrees that "[a] logical interpretation suggests that the drafters intended 'special circumstances' to allow a shifting of the time-frame for assessing the perimeters of the 2-714(2) formula." *Id.* While *Intervale* only discussed shifting the time-frame for valuating the goods forward in time, nothing is inherently contradictory about shifting that time frame to an earlier time.  Both shifts result in placing the risk of loss on a party who might not typically have it under the code.

Plaintiff argued strenuously that the "retrofit" option should not be included in the damage instruction, saying that § 714 did not authorize it.  This argument deserves a response. First, § 714 does authorize alternate instructions in special circumstances.  Second, the evidence presented here and common sense require the alternative damage instruction.  Substantial evidence suggested that any design defect could be "fixed" at relatively little expense, certainly compared to the installation of a completely new baghouse.  It is only fair that Defendants be

able to argue for this commercially reasonable result.[3]

In shifting the time frame, *Intervale* looked at the actions of the parties and the realities of the transaction.  Here the reality of the transaction is that Plaintiff took possession of the baghouse and used it for several months before the fire.  Given the fact that Plaintiff took exclusive control of the baghouse, insured it, and operated it, the Court finds it reasonable to shift the risk of loss and the time frame under § 714 onto Plaintiff.  Thus independent of when Plaintiff accepted the baghouse, the Court finds that special circumstances under § 714 exist justifying the same remedy.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for directed verdict on Plaintiff's implied warranty claim is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for directed verdict on Plaintiff's warranty claims is SUSTAINED.

IT IS FURTHER ORDERED that Plaintiff's request for damage instructions under KRS § 355.2-711 is DENIED.  The Court instructed the jury under the remedy available under KRS § 355.2-714.

IT IS FURTHER ORDERED that the Court instructed the jury that the proper measure of damages is the more reasonable of: 1) the cost of retrofitting the baghouse to make it fit for its intended purpose, or 2) the difference in value between the baghouse as received and the baghouse as warranted.

---

[3]At trial, the jury found a breach of warranty and concluded that the cost of retrofitting the baghouse to meet the warranty which it found to be $100,000, was the appropriate measure of damages.

10

July 28, 2009

John G. Heyburn II, Judge
United States District Court

cc:    Counsel of Record